

# NUMBER 13-17-00535-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **DESTINY NICOLE GONZALES,** | **Appellant,** |

**v.**

| | |
|---|---|
| **THE STATE OF TEXAS,** | **Appellee.** |

### On appeal from the 2nd 25th District Court
### of Gonzales County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Longoria, and Hinojosa
### Memorandum Opinion by Justice Hinojosa

Appellant Destiny Nicole Gonzales appeals from an order denying her motion to suppress a controlled substance found in her purse after a traffic stop. Following the denial and the reservation of her right to appeal it, Gonzales pleaded guilty pursuant to a plea agreement with the State. The trial court signed an order deferring adjudication of one count of possession of more than four but less than four hundred grams of

tetrahydrocannabinols (THC) wax, *see* TEX. HEALTH & SAFETY CODE ANN. §§ 481.103(a)(1) (West, Westlaw through 2017 1st C.S.) (including tetrahydrocannabinols "other than marihuana" in "Penalty Group 2" of Controlled Substances Act), 481.116(d) (West, Westlaw through 2017 1st C.S.), and placing Gonzales on community supervision for ten years. In one issue, Gonzales asks us to reverse the order denying her motion to suppress and, by extension, the order deferring adjudication. We affirm.

## I. BACKGROUND

On May 30, 2016, David Nething, a trooper with the Texas Department of Public Safety, was monitoring for vehicles speeding on U.S. Interstate 10. He parked his patrol car on an upward slope facing traveling vehicles so that he could see oncoming traffic, but they could not see him. Nething's radar indicated that Gonzales's vehicle was traveling ninety miles per hour in a seventy-five mile per hour zone. Nething drove on to the roadway, activated his overhead lights and siren, and accelerated past several vehicles. By the time Nething caught up to Gonzales's vehicle, she had already pulled to the right shoulder and parked.

Dashcam video from Nething's patrol car showed that he approached Gonzales's vehicle from the passenger's side and stuck his head through the rolled down passenger's side window. Gonzales told Nething, "I know why you pulled me over. I'm coming home from home [sic] back from college. Here's my license. I don't know that—this is a brand-new car, the insurance card doesn't have this registered." Nething asked Gonzales, "Now what about weed? How much weed do you have in the car?" While Gonzales was still seated in the vehicle, she denied either smoking marijuana in the

2

vehicle or possessing it. Gonzales insisted that Nething must have been smelling cigarette smoke and suggested that the smell Nething noticed came from her friend, who had borrowed the car the evening before.

At the suppression hearing, Nething testified that Gonzales appeared nervous. He further testified that he could smell something that resembled marijuana; it was under "masking odors." Gonzales's nervous demeanor and the smell of marijuana prompted Nething to ask Gonzales to exit the vehicle and for consent to search it. Gonzales declined consent, and Nething radioed for a drug sniffing K-9 unit. While waiting for the K-9 unit to arrive, Gonzales asked Nething about "concentrate," which Nething described as "wax THC." The K-9 alerted to the presence of illegal substances in the vehicle. Inside Gonzales's purse, Nething found a clear glass jar containing THC concentrate, two bags of marijuana, a black scale, a red grinder with marijuana residue, and a smoking pipe with marijuana residue.

Gonzales stipulated that she was not contesting that Nething had probable cause to search her vehicle after the K-9 alerted. Instead, Gonzales only contested whether Nething had reasonable suspicion to detain her until the K-9 unit arrived on the scene. The trial court denied Gonzales's motion to suppress, made factual findings and legal conclusions, and signed an order deferring adjudication of one count of possession of more than four but less than four hundred grams of THC wax. This appeal followed.

## II. DISCUSSION

### A. Standard of Review

We review a trial court's ruling on a motion to suppress using a bifurcated standard

3

of review. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). We give almost total deference to the trial court's determination of historical facts and of mixed questions of law and fact that rely on credibility determinations if they are supported by the record. *Id*. However, we review de novo questions of law and mixed questions of law and fact which do not rely on credibility determinations. *Id*.

## B. Reasonable Suspicion

### 1. Applicable Law

To suppress evidence for an alleged Fourth Amendment violation, the defendant bears the initial burden of rebutting the presumption that the police acted properly. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007); *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App. 2009). A defendant satisfies her initial burden if she establishes that the search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant shows she was searched or her property was seized without a warrant, the burden shifts to the State to establish that the search and the seizure were reasonable. *Id*. at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). In evaluating a trial court's suppression ruling, we must keep in mind that the "touchstone of the Fourth Amendment is reasonableness, not individualized suspicion." *Samson v. California*, 547 U.S. 843, 855 n.4 (2006). In evaluating whether a given search was reasonable, we evaluate it in relation to the search's "scope and manner of execution." *Maryland v. King*, 133 S.Ct. 1958, 1970 (2013).

In the trial court, Gonzales contested whether the facts allowed Nething to develop a reasonable suspicion to detain her until the K-9 unit arrived. A defendant's temporary detention following a traffic stop may be justified on less than probable cause if the evidence from the hearing establishes specific and articulable facts showing that the police reasonably suspected the defendant was or soon would be involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). Reasonable suspicion is proven to exist if, from the totality of the circumstances, the facts the officer articulates indicate that a reasonable person would have believed that the individual being detained was or soon would be engaged in criminal activity. *Ford v. State*, 158 S.W.3d 488, 492–93 (Tex. Crim. App. 2005). This objective standard requires courts to look solely at whether an objective basis for the stop existed, as the evaluation disregards the officer's subjective intent. *Id*.

If reasonable suspicion exists, the detention must be temporary and last no longer than necessary to effectuate the purpose of the intrusion. *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). Nevertheless, if during the course of a valid investigative detention, the officer develops a reasonable suspicion that the detainee was engaged in or soon would engage in unrelated criminal activity, a continued detention is justified. *See id*. at 245; *Graves v. State*, 307 S.W.3d 483, 490 (Tex. App.—Texarkana 2010, pet. ref'd).

### 2. Analysis

On appeal, Gonzales argues that Nething lacked reasonable suspicion and characterizes the facts preceding her detention as "(1) cooperative responses, a

5

speculative, unknown, unparticularized, and unspecified masking odor, without physical evidentiary support, (3) nervousness, and (4) a denial of consent to search her vehicle." But Nething's testimony is more than Gonzales makes it out to be. At the suppression hearing, the State asked and Nething answered:

> Q. Okay. And you said if you're not 100 percent sure. Did you believe that you could smell something that resembled marijuana?
>
> A. Yes.
>
> Q. And is that underneath the masking odors?
>
> A. Yes, ma'am.

In the trial court's findings of fact, it found that "Trooper Nething also smelled what he believed, based upon his training and his experience, to be marijuana covered up by a masking scent or odor. The masking scent was described as being much more than would normally be present."

The Texas Court of Criminal Appeals and Texas courts of appeals have consistently concluded that the smell of marijuana emanating from a vehicle provides probable cause for a search. *See Marsh v. State*, 684 S.W.2d 676, 679 (Tex. Crim. App. 1984) (holding that an officer who smelled marijuana as occupants stepped out of vehicle had probable cause to search vehicle); *Razo v. State*, 577 S.W.2d 709, 711 (Tex. Crim. App. [Panel Op.] 1979) (concluding that odor of marijuana provided probable cause to search appellant's vehicle); *see also Dickey v. State*, 96 S.W.3d 610, 613 (Tex. App.— Houston [1st Dist.] 2002, no pet.) (deciding that an officer who testified that he smelled odor of raw marijuana when he opened the appellant's car door had probable cause to search the vehicle).

6

Under the facts in this case, Nething possessed, at a minimum, reasonable suspicion to continue his investigation when he smelled what he believed to be marijuana through the passenger window of Gonzales's vehicle.  *See, e.g., Razo*, 577 S.W.2d at 711.  We conclude that the trial court did not err in denying Gonzales's motion to suppress.   We overrule her sole issue.

### III. CONCLUSION

We affirm the trial court's order denying Gonzales's motion to suppress.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
6th day of December, 2018.